Judgment rendered February 4, 2020.

No. 53,541-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

2020 FEB -4 A 10: 45
CLERK OF COURT
SECOND CIRCUIT
COURT OF APPEAL

FILED

* * * * *

ARTHUR LEONARD SEALY, III    Plaintiff-Appellee

Versus

JASON TREVOR BROWN    Defendant-Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 161,483

Honorable Charles A. Smith, Judge

* * * * *

DANIEL R. KEELE                Counsel for Appellant
JOHN C. DALTON GRIFFIN
HENRY N. BROWN, JR.

H. LYN LAWRENCE, JR.           Counsel for Appellee

* * * * *

Before MOORE, STONE, STEPHENS,
McCALLUM, and TRAYLOR (*Ad Hoc*), JJ.



**STEPHENS, J.**

This suit involves the disqualification of a candidate for the Bossier Parish Republican Executive Committee, District 9, on the grounds that he did not meet the residency requirement for the office. Jason Brown appeals the ruling of the trial court disqualifying his candidacy in the April 4, 2020, election. Appellee, Arthur Leonard Sealy, III, has filed an answer to the appeal seeking to strike certain documents from the record. For the following reasons, we affirm.

## FACTS

On January 10, 2020, Brown filed a notice of candidacy for membership on the Office of Bossier Parish Republican Executive Committee, District 9. Brown listed his address as 2606 Village Lane, Bossier City, Louisiana.[1] On January 17, 2020, in accordance with La. R.S. 18:491 and La. R.S. 14:1401, Sealy filed a petition objecting to the candidacy of Brown on the grounds that he had not resided at 2606 Village Lane, Bossier City, within the appropriate district, for more than six months prior to the election. Brown answered the petition.

On January 17, 2020, an order set the matter for trial on January 22, 2020. However, at 8:43 a.m. on January 21, 2020, the trial court judge who heard the matter signed a second order vacating that original order and set the matter for January 21, 2020, at 9:30 a.m., pursuant to La. R.S.18:1409, on the grounds that the original trial setting was untimely.[2] This precipitated

---

[1] In August of 2019, Brown was disqualified from running for the office of Police Juror District 9 after failing to satisfy the domicile requirement for that position at the 2606 Village Lane address. *See Gray v. Brown*, 53,265 (La. App. 2 Cir. 8/27/19), 278 So. 3d 1104, *writ denied*, 19-0140 (La. 8/31/19), 277 So. 3d 1186.

[2] Brown did not appear at the January 21, 2020, proceedings and an instanter attorney was appointed for him.

Brown's filing of a special declinatory exception, peremptory exception of no cause of action and peremption, and motion for nullity and to strike, which were all denied by the trial court, and are discussed *infra*.

The matter was ultimately continued to January 24, 2020, at which time Brown filed a motion *in limine* seeking to prohibit the introduction into evidence the deposition of Michael Bayham, Secretary of the Louisiana Republican State Central Committee, which had been taken on January 23, 2020. Bayham was not available for trial and Sealy sought to use his testimony to introduce into evidence the bylaws of the Louisiana Republican State Central Committee, which provide the residency requirement at issue. Because Bayham's deposition was taken on January 23, 2020, Brown objected to its introduction at trial on the grounds that he was not provided notice of the deposition in accordance with La. R.S. 18:1411, and because it was taken after the trial began. The trial court allowed the deposition to be introduced into evidence.

Thereafter 14 witnesses testified and significant documentary evidence was introduced. Brown moved for "directed verdict" after the presentation of Sealy's case.[3] The trial court denied the motion finding that Sealy had made a *prima facie* showing that Brown had not resided at the Village Lane address.[4] After completion of the testimony, the trial court took the matter under advisement.

---

[3] In a civil action, the proper procedural vehicle was a motion for involuntary dismissal under La. C.C. P. art 1672(B).

[4] It is not disputed that Sealy is a registered voter within the Bossier Parish Republican Executive Committee, District 9.

2

On January 28, 2020, the trial court issued a written judgment disqualifying Brown from participating in the April 4, 2020, election for failure to meet the residency requirements. This appeal ensued.

The trial court's cogent opinion thoroughly recounted and analyzed the evidence as follows:

> The Bossier City utility records reflect a relatively low but consistent level of water usage in the Spring and Summer of 2019. In October through December of 2019 the water usage levels drop considerably, and at time reflect no usage for stretches up to 19 days. Judy Price, a supervisor at the Bossier City Water Department, testified that the low level of water usage reflected throughout 2019 and 2020 at the 2606 Village Lane address was not "typical" of a two-person household.[5]
>
> . . . .
>
> The question of residency, however, allows for reasonable explanations as to the low usage. That a person may have multiple residences necessarily creates the reasonable assumption that a person's utilities usage at one residence would inhibit or significantly decrease the usage at another residence. Despite this assumption, no water was used at 2606 Village Lane during the nighttime hours for almost three months beginning in early October 2019.
>
> Considering this jurisprudence, the primary issue presented in this litigation involves Defendant's residency, specifically at 2606 Village Lane address. Defendant testified that he has lived 'off and on' at the 2606 Village Lane address since his father, Henry Brown purchased the home around 1980. Defendant also testified as to owning multiple properties in Shreveport, Caddo Parish, Louisiana, and that he has lived at these locations in some prior years leading up to this litigation and the present date. Nonetheless, Defendant adamantly maintained that he has always considered the 2606 Village Lane address as his residence. He is registered to vote in the precinct appropriate for the Village Lane address and has voted there through the years. His driver's license and selective service registration reflects 2606 Village Lane as his address. Numerous mortgage and banking statements prior to October 2019 to present list 2606 Village Lane as Brown's address. Until recently, the 2606 Village Lane home has been owned by Henry Brown. On December 20, 2019, Defendant executed a 'Cash Sale of Property' for the 2606 Village Lane address, thereby

---

[5] Price testified from exhibit Sealy 11, a document showing hour-to-hour water usage. She also compared the water used at 2606 Village Lane in October-December of 2019 with another two-person residence and determined that this household utilized at least 3000 gallons per month. She confirmed 19 days of no water usage in October of 2019 and 18 days in both November and December, with otherwise minimal usage on the remaining days of those months.

purchasing the home from Henry Brown. He subsequently filed for homestead exemption on the 2606 Village Lane home on December 20, 2019.

Considering the relevant jurisprudence and evidence, the Court finds that Defendant has failed to present sufficient evidence that he was a resident of 2606 Village Lane, Bossier City, Louisiana for a period of at least six months prior to the election date of April 4, 2020. This determination is bolstered by this Court's evidentiary findings. First, no water was used during the night hours from October 3, 2019 to late December 2019. Second, Defendant's vehicle registration issued on October 1, 2019 was mailed to 2606 Village Lane, but reflected Brown as the owner as listed at 858 Prospect Street, Shreveport, Caddo Parish, Louisiana. Next, this Court finds Defendant's testimony to lack credibility. Specifically, Defendant's testimony indicated that he firmly believes that he lives at the Village Lane home.

. . . .

He also testified that he spent nights at the Village Lane home, however, this claim is directly refuted by the water usage records previously mentioned.

Defendant produced certain records to Plaintiff demonstrating charges on certain credit cards. However, only the charges away from this area were shown. All other indications of charges had been redacted with the exception of a few local charges in late December 2019. This Court can only conclude that the redacted material would show charges in the Bossier/Caddo area. These charges would indicate that Jason Brown was in this area, but did not stay at the Village Lane address. With the burden shifted to the Defendant to prove residency, the totality of the evidence presented supports the conclusion that Defendant failed to meet his burden of proof, despite the reduced threshold relative to finding domicile.

The trial court's findings present a substantial review of the mostly uncontested evidence presented at the hearing. Additional evidence included several of Brown's notice of candidacy reports from early 2019 which listed the 2606 Village Lane address. Documentation from Brown's wife, Melissa Albritton, included her voter registration from January 21, 2019, her driver's license, pay stubs, and various financial statements from various months in 2019, all reflecting her address at 2606 Village Lane.

4

In his testimony, Brown identified several utility statements from the Village Lane location which evidenced increased electrical use in July, August and September of 2019, but decreased usage from October through December of 2019. Brown claimed that he and his wife paid these bills, although they remained in his father's name. Brown admitted that he did not have any kind of cable or satellite service at the house. According to Brown, he also submitted an invoice for payment of homeowners' association dues for unit 2606 from October and November 2019.

Brown challenged Price's water usage conclusions. He explained the zero water usage in the late months of 2019 by the fact that he and his wife were out of town for events at that time of the year, as well as his out-of-town work. Otherwise Brown argued that there was "clear and consistent [water] usage" at 2606 Village Lane. Brown submitted several credit card invoices reflecting activity from August 2019 through January 2020, in support of his argument that he spent most of his time out of town. The redacted invoices reflected usage "in South Louisiana," according to Brown to show the extent of time he spent at his out-of-town job. Brown also identified two "makeshift" calendars prepared by his wife, which purported to document the couple's scheduled out-of-town activities in the months of October, November, and December of 2019, along with attached documentation in support thereof.

Albritton testified that she did not do laundry at 2606 Village Lane and sends her laundry out. She identified "a few" receipts from the laundromat that she uses. Albritton confirmed that she had paid the electric bills for 2606 Village Lane since July of 2019, as well as the Bossier Parish property taxes for 2019. Albritton identified and confirmed preparing the

5

above-noted calendars for the months of October, November, and December of 2019. Albritton insisted that she used water at 2606 Village Lane in October of 2019 and contested the zero water usage amount for that month.[6] Albritton identified photographs of her living room and kitchen at 2606 Village Lane, showing personal belongings. She testified that the photographs were taken about a week before her testimony. She also identified photographs of the pantry, upstairs bathroom, a closet with clothes in it, and a guest bedroom. Albritton insisted that she was at the townhouse "almost every day from July or late June 2019 through mid-October."

Brown's father, Henry N. Brown Jr., testified that his son and his wife primarily reside at the Village Lane address.

Fred Shewmake, a former neighbor of 2606 Village Lane, testified that since October of 2019, he had seen Brown and Albritton "come and go," and "spend the night the last few months." Shewmake had moved out of his townhouse in November of 2019. Derrick Simmons testified that he helped Brown move furniture into the townhouse in spring of 2018.

## LAW

The qualifications for a member of a parish executive committee are found La. R.S. 18:444, which in relevant parts provides as follows:

> A. A member of a parish executive committee of a recognized political party shall meet the qualifications established by the rules and regulations of the state central committee of that recognized political party. The qualifications for membership on parish executive committees of a recognized political party shall be uniform throughout the state.
>
> B. (1) Members of a parish executive committee of a recognized political party shall be elected every four years at

---

[6] Sealy's counsel objected to the introduction of the calendars into evidence on the grounds that he had not received them and that they had been prepared "over the weekend." On cross-examination, Albritton admitted that she had prepared them "yesterday afternoon."

the same time as the presidential preference primary election. The term of office shall not extend beyond the time for which the member was elected. Notwithstanding this provision, members elected in 1991 shall serve until their successors are chosen.

. . . .

(3) Candidates for membership on a parish executive committee of a recognized political party shall qualify for office pursuant to the provisions of Chapter 5 of this Title.

La. R.S. 18:451 provides for the qualification of candidates as follows:

A person who meets the qualifications for the office he seeks may become a candidate and be voted on in a primary or general election if he qualifies as a candidate in the election. Except as otherwise provided by law, a candidate shall possess the qualifications for the office he seeks at the time he qualifies for that office. In the event that the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile as of the date of qualifying, notwithstanding any other provision of law to the contrary. No person, whether or not currently registered as a voter with the registrar of voters, shall become a candidate if he is under an order of imprisonment for conviction of a felony.

This statute specifically requires that when the qualifications for an office include a residency or domicile requirement, a candidate shall meet the established length of residency or domicile. As is evident from the use of the word "shall" in the statute, the requirement is mandatory. La. R.S. 1:3; *Landiak v. Richmond*, 05-0758 (La. 3/24/05), 899 So. 2d 535; *State v. Wilson*, 53,262 (La. App. 2 Cir. 8/27/19), 278 So. 3d 1081, *writ not cons.*, 19-01396 (La. 8/30/19), 277 So. 3d 1185, *recon. denied*, 19-01396 (La. 8/31/19), 277 So. 3d 1186.

Article III, Section 1 of the Bylaws of the State Central Committee of the Republican Party of Louisiana ("Bylaws") requires a member to meet the following residential qualification:

7

To qualify to be elected as a Member, a candidate must: Be a resident and a registered Republican voter of the District from which he or she is a candidate for at least six months prior to election day; and qualify as required by law.[7]

Article XIII, Section I of the Bylaws, addressing Parish Executive Committee Members, states:

In order to qualify and serve as a member of a Republican Parish Executive Committee, an individual must meet the qualifications set forth in Article III, Section I of these bylaws.

A qualified elector may bring an action objecting to the candidacy of a person who qualified as a candidate in a primary election for an office in which the plaintiff is qualified to vote. La. R.S. 18:1401(A). An action objecting to the candidacy of a person who qualified as a candidate in a primary election shall be based on specific grounds which may include that the defendant does not meet the qualifications for the office he seeks in the primary election. *See* La. R.S. 18:492.

Because election laws must be interpreted to give the electorate the widest possible choice of candidates, a person objecting to candidacy bears the burden of proving that the candidate is disqualified. *Landiak v. Richmond, supra*; *Russell v. Goldsby*, 00-2595 (La. 9/22/00), 780 So. 2d 1048. Once the party bearing the burden of proof in an objection to candidacy case has established a *prima facie* case that the candidate is disqualified, the burden shifts to the party opposing the disqualification to rebut the showing. *Dist. Attorney v. DeJohn*, 15-1478 (La. App. 1 Cir. 9/28/15), 182 So. 3d 188. See also analysis in *Landiak v. Richmond, supra*, regarding a domicile challenge.

---

[7] The Bossier Parish Executive Committee apparently also requires a person seeking election to be a resident within the appropriate district for a period of at least six months prior to the date of the election.

8

A court determining whether the person objecting to candidacy has carried his burden of proof must liberally construe the laws governing the conduct of elections so as to promote rather than defeat candidacy. Any doubt concerning the qualifications of a candidate should be resolved in favor of allowing the candidate to run for public office. *Landiak v. Richmond, supra.*

It has long been held that the terms "residence" and "domicile" are legal terms that are not synonymous. *Landiak v. Richmond, supra; State v. Wilson, supra.* An individual's place of domicile is the place of his habitual residence. La. C.C. art. 38. Further, a person can have two residences, but only one domicile. La. C.C. art. 39. Accordingly, the jurisprudence reflects that the term "resident" is not to be confused with the term "domicile." The word "domicile" means "the principal domestic establishment. " *Soileau v. Bd. of Sup'rs, St. Martin Par.,* 361 So. 2d 319 (La. App. 3 Cir. 1978). On the other hand, a person may maintain more than one residence and the fact that one is maintained for political purposes does not itself prevent the residence from being actual and bona fide. Intent to maintain a residence is an important factor, but intent alone does not establish a bona fide residence. There must be actual, physical use or occupation of quarters for living purposes before residence is established. *Williamson v. Village of Baskin,* 339 So. 2d 477 (La. App. 2 Cir. 1976), *writ denied,* 341 So. 2d 1126 (La. 1977); *McClendon v. Bel,* 00-2011 (La. App. 1 Cir. 9/7/00), 797 So. 2d 700; *Walsh v. Rogillio,* 00-1995 (La. App. 1 Cir. 9/7/00), 768 So. 2d 653, *writ denied,* 00-2610 (La. 9/12/00), 766 So. 2d 1288; *Williford v. Grady,* 96-1040 (La. App. 3 Cir. 8/5/96), 688 So. 2d 1072; *Soileau, supra.* Some of the types of documentary evidence commonly considered by courts to determine

9

domicile in fact include such things as voter registration, homestead exemptions, vehicle registration records, driver's license address, statements in notarial acts, and evidence that most of the person's property is housed at that location. *Gray v. Brown, supra.* Water usage is also a valid consideration. *Id.*

There is no minimal period required for the establishment of such a residence. The intent to establish a residence, coupled with physical actions denoting the acquisition of a residence, is sufficient. *Walsh v. Rogillio, supra*; *Butler v. Cantrell,* 630 So. 2d 852 (La. App. 4 Cir. 1993), *writ denied,* 631 So. 2d 431 (La. 1994); *Soileau, supra.*

Courts must be cognizant of the realities of modern life, in which the demands of a career and other factors often require people to spend a large amount of time at different locations. *Becker v. Dean,* 2003-2493 (La. 9/18/03), 854 So. 2d 864; *Russell v. Goldsby, supra*; *Dist. Attorney v. DeJohn, supra.*

Domicile and residency, for purposes of an election contest, present issues of fact. The standard of review of findings of fact by the trial court is the clearly wrong or manifest error standard. *McClendon v. Bel, supra.*

## DISCUSSION

On appeal, Brown raises five assignments of error. He first contends that the trial court violated his due process rights by vacating the original order setting the matter for trial and issuing a new order resetting the trial date only 45 minutes prior to the hearing. Brown next asserts that the trial court erred in denying both his special declinatory and peremptory exceptions. Brown contends that the trial court erred in admitting the Bylaws into evidence because they are impermissible hearsay evidence.

10

Finally, Brown argues that the trial court erred in finding that he failed to meet the residence requirement and in disqualifying him for the April 4, 2020, election.

Sealy argues that the trial court's ruling disqualifying Brown from seeking the subject office is not manifestly erroneous. Sealy also asserts that any procedural imperfections that occurred in observance of the stringent time constraints accompanying an election suit were harmless error. Sealy has also filed an answer and motion to strike, seeking to strike certain trial testimony and redacted credit card invoices.

## ANALYSIS

*Assignment of Error No. One:* The district court violated Brown's due process rights by vacating the January 17, 2020, order setting trial for January 22, 2020, and issuing a new order on January 21, 2020, setting trial for approximately 45 minutes after such order was issued.

*Assignment of Error No. Two:* The district court erred in denying Brown's special declinatory exception when the court did not have personal jurisdiction over Brown by virtue of its vacating the January 17, 2020 order, and by not serving Brown with the January 21, 2020, order prior to the beginning of proceedings on January 21, 2020.

*Assignment of Error No. Three:* The district court erred in denying Brown's peremptory exception because the trial on the merits did not begin prior to 10:00 a.m. on the fourth day after the filing of the petition as required by La. R.S. 18:1409(A).

La. R.S. 18:1409(A)(1) requires that trial start by 10:00 a.m. on the fourth day after an objection to candidacy suit is filed. The instant suit was filed on Friday, January 17, 2020. On that date, trial was set for Wednesday, January 22, 2020. There is no dispute that Brown was served with that order setting trial. Monday, January 20, 2020, was a holiday, Martin Luther King Jr. Day. The record reflects that Judge Smith and his law clerk were in the office on Monday, at which time they realized that the matter had been improperly set for Wednesday, January 22, as that was the fifth day after suit

11

was filed. The record also reflects that notification of the parties was attempted at that time; Brown's cell phone was called and, per the instructions on his voicemail, a text message was sent notifying him of the error and that trial would be reset to Tuesday, January 21, 2020.

The following morning, Tuesday, January 21, 2020, at 8:45 a.m., the court issued an order vacating the January 17 order setting trial for Wednesday the 22nd and issued an order resetting trial for 45 minutes later that morning, at 9:30 a.m., in an effort to comply with the four-day time frame of La. R.S. 18:1409(A). Neither Brown nor the clerk of court, his agent for service of process under La. R.S. 18:1407, was served with said order. The clerk of court did have actual notice thereof.

Trial was called at 9:30 a.m., at which time the court appointed Sara Giddens as curator *ad hoc* for Brown as per La. R.S. 18:1409(A)(2). Earlier that morning, Dan Keele, counsel for Brown, fax-filed a "Peremptory Exception," asserting no cause of action, peremption and nonjoinder of parties. Pertinent to this appeal is the argument of peremption, Brown asserted that the action was extinguished by passage of more than four days required by statute. The court denied the exception in open court. One witness, Mr. Sealy, was then called and sworn and provided his name and address. No further testimony or evidence was taken and the matter was recessed until Wednesday, January 22 (the date of the original setting).

On Wednesday, January 22, 2020, trial was called at 9:30 a.m. and all parties were present. Attorney Keele appeared for Brown and Ms. Giddens was relieved as curator *ad hoc*. After an in-chambers meeting, the court stated on the record that the matter was again recessed until Friday, January 24, 2020, at 10:15 a.m. At this time, the court also stated on the record that

12

attorneys John Griffin and Henry Brown Jr. had enrolled as counsel for Brown in limited capacities. Keele then noted his objection to the commencement of trial on Tuesday and orally preserved all motions for argument on Friday.

Also on Wednesday morning, Keele filed a "Motion for Nullity and to Strike" asserting a denial of due process based on failure to serve Brown with the Tuesday, January 21 order setting trial for 45 minutes later that morning. Brown argued that any proceedings on Tuesday, January 21, 2020, were void *ab initio* and any evidence adduced, action taken or decision by the court should be stricken.

Keele further objected to a notice of deposition of Michael Bayham, of which Keele allegedly received notice at "about 5:30 p.m." Tuesday afternoon and which noticed the deposition for Thursday, January 23, at 1:00 p.m. Keele argued that the notice of deposition did not comply with the statutory requirement of 48 hours' notice prior to trial unless the Friday setting was an initial trial setting and not a recess or continuance of a prior setting. In response, counsel for Sealy advised the court that the notice of Bayham's deposition was filed at 9:43 a.m. Tuesday morning and that the clerk of court, as agent for service for Brown, was aware and had notice in accordance with the election code. Arguments were slated for Friday and court closed.

On Friday, January 24, 2020, prior to trial, the court denied Brown's special declinatory exception, explaining:

> I – your declinatory exception was addressed, as I appreciate it, toward the actions that we took on Tuesday. The whole scenario for this is this matter was filed Friday, 4:15, something like that. It got set in error for Wednesday at 9:30. As I've stated before and I'll state it again I came in on Monday, it so

13

happened my law clerk came in on Monday and we just started talking about it and we started looking at it and we realized no, it needed to be set before 10 a.m. on Tuesday. We prepared an order, had it ready so that I could sign it on Tuesday morning and file it with the clerk. We advised Mr. Lawrence of this as well as Mr. Brown in accordance with the instructions on his – his phone, the phone number that was given which was leave him a text message. The text message said we were filing it and going to have a hearing at 9:30 that morning. Y'all are declining because he didn't get served. Okay. That's good, but your motion is going to be overruled.

Counsel for Brown objected on due process grounds and the court again stated that the motion was denied.

Next, the court addressed Brown's "Peremptory Exception" and "Motion for Nullity and to Strike." Counsel for Brown argued that the four-day hearing requirement of the election code was not satisfied and that Brown had suffered due process violations rendering the entirety of the proceedings leading up to the Friday trial null and void. Counsel also argued that the court was divested of personal jurisdiction over Brown when it vacated the January 17, 2020, order originally setting the matter for Wednesday, January 22, 2020, and signed an order resetting it for Tuesday, January 21, 2020, without effecting personal service on Brown. The court was not persuaded and denied the motion:

All right, this is how the Court looks at it, fourteen, -- Title 18:1409 Paragraph (A)(1), at the end – last sentence says the trial shall begin no later than 10 a.m. on the fourth day after suit was filed. The suit was filed on the 21st that meant – or, excuse me, on the 17th that meant it had to be started no later than 10 a.m. on the 21st. In error it was set by the Court on the 22nd at 9:30. Okay. We fixed it. We tried to get notice to everyone, we weren't able to. So, in a manner that would be the least harmful to Mr. Brown because you're right, counsel, I want him to have his rights, I want him to be able to present his case, which fortunately he is able to, on the 21st, in a timely fashion, which then following Paragraph 2 of Subsection A which says if defendant does not appear on the date set for trial the court shall appoint an attorney at law to represent him by instanter appointment, which I did, I appointed Ms. Giddens. Then

14

knowing that Mr. Brown had been served with the original
order and that he would, I believed, be there the next day I
allowed Mr. Lawrence to ask two questions that he just stated,
asked his client's name and address, then I immediately
recessed the trial to come back the next date to ensure that there
would be no prejudice whatsoever to Mr. Brown. I wanted him
to be able to hear everything that was said and frankly I'm
going to make Mr. Lawrence repeat those questions so Mr.
Brown will be here to uh, hear everything. And once (sic) case
that you cited you talk about the court stated that the defendant
in that case lost his day in court. Mr. Brown has not and will
not lose his day in court in front of this Court. He's going to
get every opportunity he needs and requests that is within the
law. Further just as an aside, Mr. Keele had filed some things
prior to 9:30, we did fax to him a copy of the order so he would
be aware of it. However, based on those things the Court
denies your motion for Nullity and to Strike.

On appeal, Brown maintains that any and all proceedings prior to
Friday, January 24, 2020, are null and void because he was denied due
process as a result of the resetting of the trial and lack of service described
above. He further asserts that the Friday, January 24, 2020, proceeding was
untimely as it was not begun within the statutory four-day delay provided in
the election code, which is a mandatory time requirement. We disagree.

First, we conclude that there were no proceedings on Tuesday,
January 21, 2020, of which Brown could have conceivably been denied due
process. Trial was called, Sealy was sworn, stated his name and address,
and court was recessed. Due to errors that the trial court readily conceded,
the matter was ultimately heard three days later on Friday, January 24, 2020.
Judge Smith clearly indicated that Sealy would be required to state his name
and address again. We find no due process violations resulting from the lack
of formal service of the order resetting this matter to Tuesday, January 21,
2020.

Second, where errors or failures of the trial court or clerk's office
cause delays in proceeding in election suits, this court has found those

15

failures not attributable or imputable to the plaintiff when no prejudice to the parties results. *State v. Pearson*, 41,812 (La. App. 2 Cir. 9/8/06), 939 So. 2d 568, *writ denied*, 06-2231 (La. 9/13/06), 936 So. 2d 1250, involved a district attorney's challenge to a candidate for chief of police based on the domiciliary requirement. All judges in the judicial district recused themselves, and an *ad hoc* judge had to be appointed by the Louisiana Supreme Court. The defendant filed a motion to dismiss the petition based on failure to begin the trial within the four-day requirement of La. R.S. 18:1409, arguing that the requirement was mandatory. This Court disagreed and applied the reasoning from *Scoggins v. Jones*, 442 So. 2d 1202 (La. App 2 Cir. 1983), *writs denied*, 444 So. 2d 113 (La. 1983), and 444 So. 2d 623 (La. 1984). In *Scoggins*, this Court found granting a motion to dismiss in similar circumstances to be reversible error where a clerk of court failed to timely file the record in the appellate court in an election contest case. This court held that the duty to timely file the record in the appellate court was that of the clerk of the district court and the failure of that official to do so was not chargeable to the appellant. Furthermore, no prejudice to the defendant was shown because of the failure. The same reasoning applies in this case; the trial court erroneously set the matter for hearing one day late and made every attempt, albeit short of personal service, to apprise the parties of the error and the change in setting. We find that the court did everything in its power to correct its error and ensure that Brown suffered no prejudice from the resetting of the matter to Friday, January 24, 2020. The spirit of the election code was not offended and there was no due process violation to Brown. These assignments of error are without merit.

16

*Assignment of Error No. Four*: The District Court manifestly erred in admitting the Republican State Central Committee Bylaws into evidence because they are impermissible hearsay.

In this assignment of error, Brown complains that the trial court erred in allowing the Bylaws to be admitted into evidence through the deposition testimony of Bayham. Specifically, Brown contends that Bayham's deposition was not taken in accordance with La. R.S. 18: 1411, which reads:

> A party to an objection to candidacy, an action contesting the certification of a recall petition, or an election contest may take a deposition relative to the facts specified or to be specified in the petition at any time before the trial, upon giving the other party at least forty-eight hours' notice of the time and place the deposition is to be taken. The deposition may be taken before any officer authorized to administer oaths, and the attendance of witnesses and the production of documentary evidence of any kind may be compelled by a court.

The record shows that on January 21, 2020, at 9:28 a.m., Sealy's counsel E-filed a request for a subpoena to depose Bayham on January 23, 2020, at 1:00 p.m., with the Bossier Parish Clerk of Court's Office. Sealy also gave written notice to Brown of the scheduled deposition at 5:33 p.m. on January 21, 2020. At the January 22, 2020, proceedings, Brown's counsel objected to the deposition notice as being untimely under La. R.S. 18:1411. Sealy's counsel argued that he was only required to notify the Bossier Parish Clerk of Court as agent for service of process. The trial court continued the proceedings until Friday January 24, 2020. Bayham was deposed as scheduled on January 23, 2020. In his deposition, Bayham stated that he would be unavailable for trial and attempted to authenticate the Bylaws for introduction into evidence.

Prior to the January 24, 2020, proceedings Brown filed a motion *in limine* to have the deposition excluded, which the trial court referred to the merits. Immediately thereafter, Sealy attempted to introduce the deposition

17

and the accompanying Bylaws into evidence. Brown argued that the deposition should be excluded because he was not given written notice 48 hours prior to the deposition and the deposition was taken after trial began in violation of La. R.S. 18:1411. Brown argued that without the deposition testimony, the Bylaws were inadmissible hearsay evidence. Brown also asserted that Bayham had not been shown to be the custodian of the records and thus was not qualified to authenticate the Bylaws.

Thereafter, a representative of the Bossier Parish Clerk of Court's Office testified that the Bossier Parish Clerk of Court's Office had received the e-filing at 9:28 on January 21, 2020.

Regarding the issue of timeliness, the trial court found that:

Based upon the expedited nature of these proceedings, based on the timeframes that were involved, based upon the notice that was given to the available parties and people at the time notice was given that those items are admissible.

After reading the deposition, the trial court also ruled that as the Secretary of the Louisiana Republican State Central Committee, Bayham was qualified to identify the documents and allowed them into evidence.

On appeal, Brown contends that the trial court erred in finding no violation of the requirements of La. R.S. 18:1411 and in finding Bayham qualified to authenticate the Bylaws.

We first find no abuse of discretion in the trial court's determination that the process utilized by Sealy in obtaining Bayham's deposition, including the notice provided to both the Bossier Parish Clerk of Court and Brown, satisfied the requirements of La. R.S. 14:1411. The trial of this matter was continued until January 24, 2020, and the deposition was taken on January 23, 2020. Pursuant to La. R.S. 18:1407, upon filing of his notice

18

of candidacy, Brown appointed the Bossier Parish Clerk of Court as his agent for service of process in the action objecting to his candidacy. Here, the evidence shows that the Bossier Parish Clerk of Court was provided notice of the deposition more than 48 hours prior to the deposition date. Further, Brown received written notice approximately 43 hours prior to that time and was able to attend the deposition. Considering the expedited nature of these proceedings, we find adequate compliance with La. R.S. 18:1411.

We also find that Bayham was a qualified witness to authenticate the Bylaws. *Achary Elec. Contractors, L.L.C. v. SimplexGrinnell LP*, 15-542 (La. App. 5 Cir. 1/27/16), 185 So. 3d 888. Any deficiency in his testimony did not ultimately prejudice Brown. Thus, we find no reversible error in the trial court's consideration of the Bylaws.

*Assignment of Error No. Five:* The Court manifestly erred in finding Jason Brown does not reside at 2606 Village Lane.

In this final assignment of error, Brown contends that the trial court improperly relied upon the opinion testimony of Price, who was not qualified as an expert. Accordingly, Brown argues that the trial court should have granted his directed verdict at the close of Sealy's case. Citing various cases, Brown also argues that the trial court erred by failing to consider and apply the presumption in favor of candidacy. Finally, Brown argues that the trial court erred in failing to consider the overwhelming affirmative testimony and corroborative exhibits, rather than circumstantial evidence, to determine the issue of his residency.

In this matter, there is very little dispute that Brown and his wife receive most, if not all, of their mail at 2606 Village Lane. The primary question before this Court therefore is whether Brown has established actual,

19

physical use or occupation of the subject townhouse for living purposes, sufficient to satisfy the residency requirement. Despite Brown's protestations regarding any opinion testimony given by Price, a lay witness can give opinion testimony based on his training, investigation, perception of the scene, and observation of physical evidence. *Temple v. State ex rel. Dep't. of Transp. & Dev.*, 02-1977 (La. App. 1 Cir. 6/27/03), 858 So. 2d 569, *writ denied*, 03-2116 (La. 11/7/03), 857 So. 2d 501; *Wingfield v. State, ex rel. Dep't. of Transp. & Dev.*, 01-2668 (La. App. 1 Cir. 11/8/02), 835 So. 2d 785, *writs denied*, 03-0313, 0339, 0349 (La. 5/30/03), 845 So. 2d 1059, 1060, *cert denied*, 540 U.S. 950, 124 S. Ct. 419, 157 L. Ed. 2d 282 (2003).

Here, Price described her extensive experience with water billing. As such, her opinion testimony regarding a comparison of water usage to other two-person households was proper. Otherwise her testimony regarding the actual amount of water usage was factual and largely uncontested by Brown. Actual water usage is proper evidence for establishing or refuting residency. If accepted, Price's testimony was sufficient to establish that a drop in water usage occurred during the months of October through December of 2019, that included a substantial number of days with no water usage and minimal water usage at night, contrary to the immediately preceding months. The electricity bills from those months also document a corresponding sharp drop in electricity usage during those three months, as well as January of 2020. It is the duty of the trier of fact to weigh credibility and to accept or reject all or part of a witness's testimony. *Badke v. USA Speedway, LLC,* 49,060 (La. App. 2 Cir. 5/14/14), 139 So. 3d 1117, *writ denied*, 14-1533 (La. 10/24/14), 151 So. 3d 606; *Corder v. Lively,* 39,780 (La. App. 2 Cir. 6/29/05), 907 So. 2d 824. Where there is conflict in the testimony,

20

reasonable evaluation of credibility should not be disturbed on appeal. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

Based on this evidence, we find no abuse of discretion in the trial court's determination that Sealy established a *prima facie* case to show that Brown did not reside at the 2606 Village Lane town house six months prior to the scheduled election. The trial court also determined that Brown failed to present sufficient evidence to overcome that *prima facie* case. Considering the broad discretion afforded to the trial court in these matters, we can also find no manifest error in this determination. The evidence presented by Brown to overcome the *prima facie* evidence included Brown's and his wife's testimony that the couple was out of town during the final three months of 2019. In support of these claims, Brown's wife submitted two calendars she admittedly prepared the weekend before her testimony. We find that such documentary evidence may reasonably be considered self-serving and unpersuasive. Likewise, photographs taken by Albritton "about a week" before her testimony to show the presence of clothing, toiletries, and pantry items at the townhouse can also reasonably be viewed as unreliable. Ultimately, the trial court rejected Brown's testimony as lacking credibility and accepted as persuasive the actual water usage and utility evidence. We discern no manifest error in the trial court's credibility determination or ultimate conclusion that Brown failed to present sufficient countervailing evidence to show that he resided at 2606 Village Lane in the six months preceding the April 4, 2020, election. Accordingly, the judgment of the trial court is affirmed.

21

## ANSWER TO APPEAL

Sealy filed an answer to the appeal seeking to strike the following: (1) the testimony of Henry Brown Jr. as a violation of the advocate-witness rule, and (2) the redacted credit card receipts because they were not originals or admissible duplicates as well as the testimony of Jason Brown as to what the receipts would have shown had they not been redacted.

First, regarding the testimony of Henry Brown Jr., we note that there is no dispute that he was counsel of record for Jason Brown when he was called as a witness and gave testimony, over plaintiff's objection, that Jason Brown lives at the Village Lane residence. The defendant and his wife both provided similar testimony. In light of our conclusion herein and because the testimony of Henry Brown Jr. was duplicative and had no bearing on our findings, we pretermit any discussion of the propriety of the admission of his testimony vis-à-vis the advocate-witness rule.

Next, Sealy seeks to strike the redacted credit card receipts and Brown's testimony as to what the redacted material would have shown had it not been redacted. A review of the record reveals that, while plaintiff's counsel queried why the credit card receipts had been redacted during his examination of Brown, he did not object to the introduction of the receipts, or to Brown's testimony regarding the same. In the absence of a contemporaneous objection, this issue was not preserved for review by this Court and will not be addressed in this appeal. *Davidson v. Castillo*, 52,727 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1157, *writ denied*, 19-1472 (La. 11/12/19), 282 So. 3d 233; *Port City Glass & Paint Inc. v. Brooks*, 52,534 (La. App. 2 Cir. 2/27/19), 266 So. 3d 516.

22

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed to Appellant, Jason Trevor Brown.

**AFFIRMED.**